**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAHEEMA HOWARD, INDIVIDUALLY AND AS ADMINISTRATRIX FOR THE ESTTE OF RICKY HOWARD** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.:  10-cv-3184 (JS)** |
| | : | |
| | : | |
| **POLICE OFFICER SHAMAYA ALLEN-BULLOCK, BADGE #1481, et al.** | : | **JURY DEMAND** |
| **Defendants.** | : | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Defendants, the City of Philadelphia and Police Officer Shamaya Allen-Bullock (now Shamaya Allen) (hereinafter sometimes referred to as "the defendants" or "PO Allen"), hereby move for summary judgment on all claims asserted against them by the plaintiff, Raheema Howard, in her own right and as the administratrix of the estate of Ricky Howard (deceased).

The plaintiff's suit arises from a fatal police shooting that occurred at around 7:29 p.m. on March 26, 2008, in the parking lot of the Crab Shack located at the corner of Chalmers Street and Lehigh Avenue, in Philadelphia, Pennsylvania.  The plaintiff's decedent, Ricky Howard (sometimes hereinafter referred to as "Mr. Howard"), was fatally shot by PO Allen when Mr. Howard pointed a gun at PO Allen.

In the Complaint (Doc. #1), the plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States against the City of Philadelphia ("the City"), based on the City's alleged failure to supervise, train and discipline its

police officers (see generally, Count I of the Complaint).  The plaintiff also seeks relief against PO Allen, individually, pursuant to § 1983 and the Fourth and Fourteenth Amendments to the Constitution, alleging PO Allen's use of deadly force Mr. Howard violated his right to be free from excessive force.  (Count I of Complaint.)  The plaintiff seeks further relief against PO Allen based on supplemental state law claims of assault and battery.  (Count II of Complaint.)

The City and PO Allen filed an Answer with Affirmative Defenses (Doc. #2), asserting several affirmative defenses, including a failure to state a claim upon which relief can be granted, qualified immunity, police privilege, and immunity pursuant to Pennsylvania's Political Subdivision Tort Claims Act ("Tort Claims Act").

## II.  STATEMENT OF UNDISPUTED FACTS

See Exhibit A, Statement of Undisputed Facts.

## III.  SUMMARY JUDGMENT STANDARD

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  Id.  All inferences must be drawn, and all doubts resolved in favor of the non-moving party.  See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that he believes demonstrate the absence of material fact

disputes.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party, and may not rest on mere denials.  See id. at 321 n.3; First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co., 824 F.2d 277, 282 (3d Cir. 1987).

In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case."  Celotex, 477 U.S. at 322-24.  The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion.  See Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989).  Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party."  Schwartz v. Hospital of Univ. of Pa., 1993 U.S. Dist. LEXIS 6108 at *6 (E.D. Pa. May 7, 1993).  Furthermore, "[p]laintiff cannot "simply reassert factually unsupported allegations in its pleadings."  Poles v. St. Joseph's Univ., 1995 U.S. Dist. LEXIS 13145 at *14 (E.D. Pa. September 11, 1995) citing Celotex, 477 U.S. at 325.  "Plaintiff must present affirmative evidence in order to defeat this properly supported motion for judgment."  Id.

## IV.  LEGAL ARGUMENT

### A.  PO ALLEN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE SHE DID NOT VIOLATE MR. HOWARD'S CONSTITUTIONAL RIGHTS.

Government officials performing discretionary functions generally are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982).  The doctrine of qualified immunity "seeks to ensure that defendants reasonably can anticipate when their conduct may give rise to liability by attaching liability only if the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  United States v. Lanier, 520 U.S. 259, 270-271 (1997) (internal quotations and citations omitted).  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Anderson v. Creighton, 483 U.S. 635, 638 (1987) [quoting Malley v. Briggs, 475 U.S. 335, 341 (1986) (emphasis added)].

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court of the United States discussed a two-step inquiry that should be used to determine whether police officers can be held liable for an alleged violation of a plaintiff's constitutional rights.  Id. at 201.  The first step is to ask:  "Taken in a light most favorable to the party asserting injury, do the facts alleged show the officers' conduct violated a constitutional right?"  Id.  If no constitutional right would have been violated, then there is no need for further inquiries about qualified immunity, and summary judgment in favor of the officer is appropriate.  Id.  However, ". . . if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  Id.  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  Id. (emphasis added).  "The inquiries for qualified immunity and excessive force remain distinct, even after Graham."  Id. at 204 (emphasis added).  Therefore, in this latter inquiry, the Court should consider whether the unlawfulness of the officer's action would have been apparent to an objectively reasonable police officer confronted by the same circumstances.  See generally, id. at 203-209 (discussion on why not distinguishing these inquiries is inconsistent

with <u>Graham v. Connor</u> and other decisional law concerning qualified immunity and the use of

force); <u>see</u> <u>also</u>, <u>Showers v. Spangler</u>, 182 F.3d 165, 171-172 (3d Cir. 2000) ("objective legal

reasonableness" prong of qualified immunity analysis discussed).

The Supreme Court recently modified the analysis in <u>Saucier v. Katz</u> in <u>Pearson v.</u>

<u>Callahan</u>, 129 S.Ct. 808, 818 (U.S. 2009).  In <u>Pearson</u>, a unanimous Supreme Court concluded:

> …that, while the sequence set forth [in <u>Saucier</u>] is often
> appropriate, it should no longer be regarded as mandatory.  The
> judges of the district courts and the courts of appeals should be
> permitted to exercise their sound discretion in deciding which of
> the two prongs of the qualified immunity analysis should be
> addressed first in light of the circumstances in the particular case at
> hand.

<u>Pearson v. Callahan</u>, 129 S.Ct. 808, 818 (U.S. 2009).   Following <u>Pearson</u>, the two-prong

sequence set forth in <u>Saucier</u> is appropriate in this case.

**1. There is insufficient evidence for a jury to determine whether PO Allen violated Mr. Howard's constitutionally protected right to be free from the use of excessive force.**

The only right implicated in this case is whether PO Allen deprived Mr. Howard of his

right to be free from the use of excessive force, which is the explicit textual source of the

plaintiff's § 1983 claims against PO Allen and the City.  <u>Albright v. Oliver</u>, 510 U.S. 266, 272-

273 (1994), citing <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.6 (1989).  The plaintiff has not

developed sufficient evidence for a reasonable jury to decide whether PO Allen violated Mr.

Howard's right to be free from the use of excessive force.

The undisputed evidence shows that PO Allen was justified in using deadly force when

Mr. Howard pointed a gun at her after she had told him several times to drop the gun.  PO  Allen

arrived at the parking lot of the Crab Shack on Chalmers Street and Lehigh Avenue in her patrol

car, in uniform, in response to a radio call of shots fired.  Upon her arrival, she saw two males

lying on the ground of the parking lot struggling over something she soon discovered to be a handgun.  When she exited the patrol car, she drew her weapon and immediately began ordering the males to drop the gun.  One of the males, later identified as Edward Parks, separated himself from the other male, Mr. Howard.  At that instant, Mr. Howard, lying on the ground with his feet towards PO Allen, who was just 7 to 10 feet away from Mr. Howard, rolled over and pointed the handgun at PO Allen.  Fearing for her life, PO Allen discharged her firearm twice, striking Mr. Howard in his hip and upper leg.

The Fourth Amendment provides, in pertinent part, "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures . . . ."  Use of deadly force by a law enforcement officer is considered a "seizure" under the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 395 (1989).  In this case, the issue is whether PO Allen's use of deadly force violated Mr. Howard's constitutional right to be free from unreasonable seizure (i.e., excessive force).

The plaintiff has produced no evidence that contradicts PO Allen's testimony about what happened in the split seconds leading up to the discharge of her firearm on March 26, 2008.  Without such evidence, no reasonable trier of fact could conclude that PO Allen had violated Mr. Howard's constitutional right to be free from excessive force.  When he pointed the gun at PO Allen, Mr. Howard placed PO Allen in fear for her life.  Following Graham v. Connor, in this rapidly evolving and tense situation, it was reasonable for PO Allen to shoot Mr. Howard.  Consequently, as there is no violation of a constitutional right under this record, summary judgment should be granted in favor of PO Allen, and consequently the City, on the plaintiff's federal claims.[1]

---

[1] If the Court determines there is no underlying constitutional violation by PO Allen, or that PO Allen's conduct was objectively reasonable, it follows that the City cannot be liable.  See, City of Los Angeles v. Heller, 475 U.S. 796,

**2. Even if this Court were to determine a reasonable jury could find PO Allen's conduct violated Mr. Howard's constitutional right, her use of deadly force was objectively reasonable under the circumstances confronted by her March 26, 2008.**

If the Court were to determine that a jury could find PO Allen's conduct violated a constitutional right, PO Allen is nevertheless entitled to qualified immunity. As stated in detail above, the undisputed evidence establishes that PO Allen's use of deadly force was objectively reasonable. Graham v Connor, 490 U.S. 386 (1989).

The facts to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Reasonableness is to be evaluated from the "perspective of a reasonable officer on the scene, **rather than with the 20/20 vision of hindsight**." Id. (emphasis added). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. The test is one of "objective reasonableness." Id. The test is "whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation[]." Id.

Qualified immunity protects police officers from the "sometimes 'hazy border between excessive and acceptable force.'" Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004) (internal citation omitted). This is so even where the police officer's belief, although mistaken, is reasonable under the circumstances. See id., quoting Saucier, supra at 205. The

---

798-99 (1986); Kneipp v. Tedder, 95 F.3d 1199, 1212 n.26 (3d Cir. 1995) (§ 1983 claim cannot stand if the underlying constitutional claim is invalid); Mark v. Borough of Hatboro, 51 F.3d 1137, 1149-50 (3d Cir. 1995) (unless the plaintiff establishes a constitutional injury, it is irrelevant for purposes of § 1983 liability whether the city's policies caused an injury), cert. denied, 516 U.S. 858 (1995).

Third Circuit has upheld qualified immunity even in cases where the action in question violates the Constitution, "[w]here there is 'at least some significant authority' that lends support of the police action." Id. at 243 (internal citations omitted).  Thus, the proper question is "whether, in the circumstances [confronted by PO Allen], it would have been clear to a reasonable officer that [PO Allen's] conduct was unlawful in the situation [she] confronted.  If it would not have been clear, then qualified immunity is appropriate." Id.

As discussed above, PO Allen is entitled to qualified immunity for her actions.  The question **is not** whether her use of force violated clearly established law in a generalized sense; rather, the question is:   **Would an objectively reasonable officer, under the same circumstances confronted by PO Allen, <u>have known</u> that her actions would violate the clearly established law?**  In this case, no objectively reasonable officer would have known that discharging his or her weapon at a person pointing a gun at the officer would be considered an excessive use of force and therefore violate the clearly established law.  Consequently, PO Allen's use of deadly force was objectively reasonable and she is entitled to qualified immunity.[2]

### B.   PLAINTIFF CANNOT PROVE THE CITY IS LIABLE BASED ON <u>MONELL</u> AND ITS PROGENY.

In determining whether or not a municipality is liable in a § 1983 action, the Court must decide if the underlying constitutional claim is valid.  See, e.g., City of Los Angeles v. Heller, 475 U.S. 796, 798-99 (1986); Kneipp v. Tedder, 95 F.3d 1199, 1212 n.26 (3d Cir. 1995) (§ 1983 claim cannot stand if the underlying constitutional claim is invalid); Mark v. Borough of Hatboro, 51 F.3d 1137, 1149-50 (3d Cir. 1995) (unless Plaintiff establishes a constitutional

---

[2] See Saucier, supra, at 205, wherein the Supreme Court concluded:  "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. . . . It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.  **If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.**"  (Emphasis added.)

injury, it is irrelevant for purposes of § 1983 liability whether the city's policies caused an injury), cert. denied, 516 U.S. 858 (1995).  The City's position is that there has been no violation; hence, no municipal liability.  Nevertheless, if this court were to find that a reasonable jury could find PO Allen had violated Mr. Howard's constitutional right, and that PO Allen is not entitled to qualified immunity, the plaintiff still cannot prevail on her claim against the City.

To prevail against a municipality under § 1983, a plaintiff must demonstrate that the municipality itself, through the implementation of municipal policy or custom, caused the underlying constitutional violation.  Monell v. Dept. of Social Svcs., 436 U.S. 658 (1978).  The plaintiff must satisfy the stringent standards established by the Supreme Court in Monell and its progeny.  The Supreme Court held in Monell that a municipality will not be held liable on the basis of respondeat superior; it will only be held liable where there is evidence establishing that the alleged constitutional violation was the result of a municipal policy, custom or practice. Monell, supra, 436 U.S. at 691-95.

Meeting the burden of proof for governmental liability under Monell has been approached in two different ways:  By reliance on an official policy, or by adducing evidence of a municipal custom.  "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990), quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).  Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.  Andrews, supra, 895 F.2d at 1480; see also Fletcher v. O'Donnell, 867 F.2d 791, 793-794 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence"), cert. denied, 492 U.S. 919 (1989).

Monell liability must be founded upon **evidence** that the government unit itself supported a violation of constitutional rights.  Bielevicz v. Dubinon, 915 F.2d 845, 849-850 (3d Cir. 1990) (citing Monell) (emphasis added).

Thus, municipal liability attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell, 436 U.S. at 694.  Before municipal liability will be imposed, the plaintiff must prove that the municipality's alleged unconstitutional practices are **"so widespread as to have the force of law."** Bd. of Commrs. of Bryan Co. v. Brown, 520 U.S. 397, 404 (1997); accord, Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996); Andrews, supra, 895 F.2d at 1480 (emphasis added).  "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  Pembaur, supra, 475 U.S. at 479 (emphasis in original).  "[T]o be sure, 'official policy' often refers to formal rules or understandings – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time."  Id. at 480-81.

Further, the plaintiff must establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 385 (1989).  Here, the plaintiff bears the burden of proving that the municipal policy or widespread custom or practice was the "moving force" behind her husband's (Mr. Howard's) death.  Bryan Co., 520 U.S. at 407-08.  That is, she must prove that it is more likely than not that the alleged unconstitutional policy, or longstanding unconstitutional custom or practice, caused Mr. Howard's death.  See Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989) (must

prove decision of final policymaker caused the deprivation of rights by policies or by acquiescence in a longstanding custom or practice that constitutes a standard operating procedure of the local governmental entity) (internal quotations and citations omitted).

### 1. The plaintiff has not adduced competent evidence of the City's failure to train police officers in the use of deadly force.

The plaintiff claims the City's training of its police officers is deficient.  Her failure to train claim is legally flawed.  In City of Canton, supra, the Supreme Court discussed a municipality's potential liability under § 1983 for an alleged failure to properly train its employees.  The Court explained that there are "limited circumstances" in which an allegation of a municipality's failure to train can be the basis of a § 1983 claim against the municipality.  Id. at 387.  "[T]he inadequacy of [employee] training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come in contact."  Id. at 388.  The Court explained that a municipality may be liable under § 1983 for the failure to train "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a policy as defined by our prior cases."  Id. at 389. The focus in this determination is on the adequacy of the training program in relation to the tasks the particular employees must perform and the connection between the identified deficiency in the municipality's training program and the ultimate injury.  Id. at 390-91.  To succeed on a § 1983 claim, the party must prove that the training deficiency actually caused the injury.  Id. at 391.

The Canton Court further explained that it is not enough to show that the municipality is responsible for the training program in question, id., and it is not enough to establish that a particular employee has been unsatisfactorily trained, for the employee's shortcomings may be the result of factors other than a faulty training program.  Id. at 390.  It is not enough to prove that an incident would not have happened if an employee had "better" or "more" training,

because even the best-trained employees will occasionally make mistakes. <u>Id</u>. at 391. As the <u>Canton</u> Court recognized, "in virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." <u>Id</u>. at 392. The <u>Canton</u> Court thus concluded that a municipality's alleged failure to train will give rise to liability only where the failure to train "reflects deliberate indifference to the constitutional rights of its inhabitants." <u>Id</u>. A failure to train police officers "can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.'" <u>Montgomery v. De Simone</u>, 159 F.3d 120, 127 (3d Cir. 1998).

Of particular note here, the plaintiff here has not adduced **<u>any evidence</u>** that a final policymaker of the City knew that police officers needed "better" or "more" training in the use of deadly force while on duty, but consciously decided to forego such additional training. She has neither identified the specific training the City should have offered that would have prevented the deprivation of Mr. Howard's constitutional rights, nor has she established that such training was not provided. As pointed out in the Statement of Undisputed Facts, the evidence shows the City trains police recruits on how to use deadly force, a topic mandated by Pennsylvania's Municipal Police Officers' Education and Training Commission ("MPOETC"). See 37 PA. CODE § 203.51 (application of force and firearms training are two of several mandated courses that must be included in the Philadelphia Police Academy's basic police recruit training curriculum); and see Exhibits B and C. The City also trains its police officers extensively on how and when to use deadly force. See 37 PA. CODE § 203.52 (mandatory annual in-service training of all municipal

police officers, which, in the MPOETC 2006 Legal Updates, included use of force in law enforcement revisited, Exhibit E at 1060-1102; and see PPD Firearms Training Unit Glock In-Service Training, Exhibit E at 1250-1296.   Furthermore, when a Philadelphia police officer discharges his firearm, she must undergo post-discharge of firearm training.  See Exhibits F (at 1297-1310) and G (at 152).  It is for these reasons that the plaintiff's "failure to train" claim fails as a matter of law. [3]

### 2. There is no evidence of an unconstitutional policy or widespread custom or practice of Philadelphia police officers using deadly force in violation of citizens' constitutional rights.

Moreover, there is no proof before this Court that the City's existing policies or customs threaten citizens' constitutional rights.  There is no evidence that the City, through its Police Commissioner, had knowledge of or acquiesced in a widespread custom of police officers using deadly force in violation of citizens' constitutional rights.

Based on the foregoing, the plaintiff is unable to satisfy any of the necessary elements to prove municipal liability based on this theory of liability.  Therefore, the Court should grant summary judgment in favor of the City on this claim.

### 3. The plaintiff has not adduced evidence of deliberate indifference on the part of a policymaker.

Whether the plaintiff proceeds under a theory that an official policy or a widespread custom or practice caused the violation, her burden of proof is the same:  She must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.  Andrews, supra, 895 F.2d at 1480.  To

---

[3] It is noteworthy that the Third Circuit has held that the City of Philadelphia "enforces directives that reflect proper police procedure [in the use of deadly force].  The directives require officers to use force only as a last resort to avoid death or serious bodily injury, and to take all reasonable steps to avoid making the use of force necessary. . . . When the City finds a violation, it retrains that officer in the proper use of firearms and metes out disciplinary measures if appropriate." Grazier v. City of Philadelphia, 328 F.3d 120, 125 (3d Cir. 2003).

identify who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." Id. at 1481. Under § 1983, only the conduct of those officials whose decisions constrain the discretion of subordinates constitutes the acts of the municipality. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

The policymaker of the Philadelphia Police Department is the Police Commissioner. See Andrews, supra, at 1481 (Police Commissioner is a policymaker for the City's Police Department). This being the case, the plaintiff here must present scienter-like evidence of deliberate indifference on the part of the Police Commissioner. The requirement of producing scienter-like evidence on the part of an official with policymaking authority is consistent with the conclusion that "'absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity, cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom for failure to train.'" Beswick v. City of Philadelphia, 185 F. Supp. 2d 418, 427 (E.D. Pa., 2001), quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1063 (3d Cir. 1991).

Municipal liability under § 1983 potentially attaches only where the policymaker makes a deliberate choice to follow a course of action from among various alternatives. Pembaur, supra, 475 U.S. at 483; Bryan Co., supra, 520 U.S. at 404 ("plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged") (emphasis in original).

In this case, there is none of the "scienter-type evidence" that is required to hold the City liable for failing to train, supervise or discipline its police officers. Simmons, supra, 947 F.2d at 1063. That is to say, there is no evidence that the City's existing supervision, disciplinary system or training programs would **obviously** lead to constitutional violations. The City argues

that, even if a jury could find PO Allen had violated Mr. Howard's civil rights, the plaintiff cannot show that PO Allen did so while executing an officially adopted policy declared by City officials, or that she was acting pursuant to an officially adopted custom. That is to say, no evidence exists that the Police Commissioner was aware of a widespread use of deadly force by Philadelphia police officers in violation of citizens' constitutional rights.[4]

Any argument that the Police Department's internal investigations and disciplinary system are so flawed that it encourages police officers to use deadly force in violation of citizens' rights is without merit as well.   To the contrary, the record evidence shows that all police discharges are investigated, and that investigations into police discharges during the period of 2003 through 2007 resulted in the dismissal of 3 police officers and discipline of 87 officers ranging from official reprimand to 30 days suspension without pay.  See Exhibit A, ¶¶ 26-29; see also, Glass v. City of Philadelphia, 455 F. Supp. 2d 302, 343-344 (E.D. Pa. 2006) [district court concluded that the Philadelphia Police Department's Internal Affairs Division's investigation process "has teeth," as required by Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996)]; and see, supra n. 3.

For the foregoing reasons, the plaintiff's claims that the City has failed to train, supervise or discipline its police officers fail as a matter of law and should be dismissed with prejudice.

**4.   The plaintiff cannot establish that a City policy or widespread custom or practice directly caused a violation of the plaintiff's decedent's constitutional rights.**

The plaintiff bears the burden of proving that a municipal policy was the "moving force" behind his brother's death.  Bryan Co., supra, 520 U.S. at 407-08.  This means she must prove that it is more likely than not that the alleged unconstitutional policy, custom, or practice directly

---

[4] Moreover, PO Allen has never been disciplined for any reason.  This is significant because, without a disciplinary history of violating the PPD's policy on use of deadly force, no Police Commissioner could have been on notice that PO Allen needed closer supervision, more discipline or more training.

<u>caused</u> Mr. Howard's death.  <u>Jett</u>, <u>supra</u>, 491 U.S. at 737.  Even if the plaintiff could show deliberate indifference on the part of the City in failing to train, supervise or discipline its police officers, she would also have to prove that the City's inadequate training, supervision or discipline was the moving force behind PO Allen's of deadly force on March 26, 2008.  <u>See</u>, <u>Grazier v. City of Philadelphia</u>, 328 F.3d 120, 124-125 (the City's decisions **must be** the moving force behind an actual constitutional violation, citing <u>Canton</u>, <u>supra</u>, at 389; that the City's inadequate training policies on the use of force were the moving force behind the plaintiff's injuries, again citing <u>Canton</u>, <u>supra</u>, at 389) (emphasis added).  Here, the plaintiff is unable to satisfy this critical element of municipal liability.

The plaintiff has developed no evidence whatsoever that could lead a jury to find that Mr. Howard's death was directly caused by any unconstitutional policy, or by a widespread unconstitutional custom or practice, of the City.[5]  Without the requisite evidence of causation, all claims against the City in Count I fail as a matter of law and, therefore, should be dismissed with prejudice.

### C.  THE PLAINTIFF'S STATE LAW CLAIMS IN COUNT II ARE BARRED BY THE TORT CLAIMS ACT.

The plaintiff's state law claims against PO Allen are barred by the Tort Claims Act.  Out of respect for judicial economy, convenience and fairness to the parties, PO Allen respectfully requests This Honorable Court to exercise supplemental jurisdiction over the plaintiff's state law claims and dismiss them with prejudice.  <u>See</u> <u>Bright v. Westmoreland County</u>, 443 F.3d 276, 286 (3d Cir. 2006) (the trial court has discretion to exercise supplemental jurisdiction over pendant state claims out of respect for judicial economy, convenience and fairness to the parties).

---

[5] Indeed, she has developed no competent evidence whatsoever that the City's supervision, discipline or training of its police officers is constitutionally deficient.

The tort liability of the City of Philadelphia ("the City") is governed and limited by the Political Subdivision Tort Claims Act ("the Act"), 42 PA. CONS. STAT. ANN. §§ 8541-8564.  The Act provides municipalities with general immunity from tort liability, as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 PA. CONS. STAT. ANN. § 8541.  A municipal employee may only be liable "to the same extent as [her] employing local agency and subject to the limitations imposed by this subchapter."  42 Pa.C.S. § 8545.  However, a City employee is not immune from a claim of personal injury if her actions causing the injury constitute a crime, actual fraud, actual malice or willful misconduct. ID. at § 8550 (willful misconduct).  Willful misconduct is the intention to do what is **known** to be wrong, as in using excessive force to make an arrest **knowing** that the force used is excessive. See In re City of Philadelphia Litigation, 938 F. Supp.1264, 1271 (E.D. Pa. 1996) (district court analyzed Pennsylvania's Tort Claims Act and Pennsylvania decisional law regarding "willful misconduct" in context of use of force) (emphasis added).   **"[T]he existence of willful misconduct is a question of law that 'must be judicially determined.'"**  Kuzel v. Krause, 658 A.2d 856, 860 (Pa. Commwlth. Ct. 1995) quoting 42 PA. CONS. STAT. ANN. § 8550 (emphasis added).

The Tort Claims Act provides for a limited waiver of the PO Allen's general immunity. See 42 PA. CONS. STAT. ANN. § 8542.  The eight exceptions of this general immunity must be narrowly interpreted, given the expressed legislative intent to insulate local governments or political subdivisions from tort liability.  Lockwood v. City of Pittsburgh, 751 A.2d 1136 (Pa. 2000);  Snyder v. Harmon, 562 A.2d 307 (Pa. 1989); Love v. City of Philadelphia, 543 A.2d 531 (Pa. 1988); Mascaro v. Youth Study Center, 523 A.2d 1118 (Pa. 1987).

None of the plaintiff's intentional tort claims fit into any of the eight exceptions to immunity. Moreover, there is insufficient evidence for a reasonable jury to determine that PO Allen knew her use of deadly force was unlawful. Thus, her immunity is not waived under 42 PA. CONS. STAT. ANN. § 8550.

## V. CONCLUSION

For all the foregoing reasons, summary judgment should be granted in favor of the defendants and all the plaintiff's claims against them should be dismissed with prejudice.

Respectfully submitted,

/s/ Matthew K. Hubbard
MATTHEW KEVIN HUBBARD
Divisional Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102-1595
(215) 683-5439 (direct dial)
Dated: February 16, 2011                    (215) 683-5397 (fax)